Good morning, Your Honors. Donald Cook for the Plaintiff Appellant. I hope Judge Sessions is enjoying our drought-like conditions. If one applies a Graham objective reasonableness standard to the facts here, a reasonable jury could easily find excessive force. Ms. Jackson was not threatening injury. Officer Armstrong could see her. Knew that she was not threatening injury. Knew that in any event a head strike was not justifiable under these circumstances. No life-threatening attack. However, of course, we didn't have a Graham standard here. We had essentially a due process standard going back really to Johnson v. Glick. And Judge Sessions didn't have a seizure because, of course, she turned and ran and fled. This Court's decision last May, Falarca v. Bergano, I think, is dispositive on that point. Very similar. There it was a campus protest. Free protesters. Campus police trying to get them out of the area. There's uses of force. None of the protesters are detained. None are arrested. None are detained. They go about their business. They sue, claiming, you know, push, strike, hit, unreasonable. This Court reviews it under a Graham standard and finds, of course, that the, well, in that case, concluded that the force did not rise to the level of a Fourth Amendment violation. But the key point is it was a Graham analysis. So this she kept fleeing after she got hit in the head does not stand up, even really based on precedent before the Falarca decision. The argument is made, well, this was either an unintended or accidental use of force. No, no, no, no. It's true that Officer Armstrong testified that I thought the shadows in front of me was the person who just kicked me in the groin. But wait a minute. He meant to swing his baton at what he was acknowledging was a person in front of him. Of course, it happens to be Ms. Armstrong. So it is still a seizure. Counsel, Ms. Armstrong felt free to leave and left, correct? Ms. Jackson felt free. Well, I'm sorry. She certainly was free to leave. Ms. Jackson Moser, excuse me. Yeah, I understand. Yes, she did that. I wouldn't call this the type of consensual encounter on the sidewalk where often that language comes up. But it's absolutely true that she did turn around and she did factually flee, that the baton strike to the head did not stop her flight. And no one chased her? No, not her specifically. I mean, the officers continued to move the protesters, but you're correct. They did not chase her down. And similarly, the officer did not intend to restrain her liberty of movement in any particular way. In fact, this is a unique situation because the officers were trying to move people out of the highway or close to the highway up the hill and move them away. And so is there any evidence to suggest that Mr. Armstrong really intended to restrain her liberty of movement in any significant way as opposed to just move her out of the highway? The first part of your question, Judge Sessions, I disagree with. I say there was substantial evidence, sufficient evidence for a jury to find that he did intend to restrain her movement by intentionally swinging the baton in her head. Now, I realize he denies intentionally trying to hit the head. But what we know from evidence, and I think on this particular issue, you have to give the plaintiff the inferences on the evidence. But his testimony was that he had just been kicked in the upper leg or groin area. He was thinking he was being attacked by somebody. Because of the sweat, he could not see clearly who was there. And he was acting and flailing about with an intention of protecting himself in self-defense, not to try to put somebody in custody. Is that correct? You are absolutely correct on your recital of his testimony. But when you look at the other evidence, which is Ms. Jackson's testimony, the testimony of Officer Davila, according to Ms. Jackson, they had eye contact. He could see her. She could see his eyes, the inferences. He could see her. Officer Davila testified it was obvious to him that Ms. Jackson was not the person who had just kicked the officer. Counsel, I think we're getting a little off track here because we're not supposed to be looking at the subjective intent of the officer in the seizure analysis. Our case in Nelson v. City of Davis, it's 9th Circuit, 2012, expressly rejects that argument. It's not a legitimate argument. There, the officers argued that their actions could not constitute a seizure because their intent was to disperse the crowd. That's like this argument that we wrote, the Supreme Court has repeatedly held that the Fourth Amendment analysis is not a subjective one. The intent that counts under the Fourth Amendment is the intent that has been conveyed to the person confronted. And the criterion of willful restriction on is not an imitation to look at subjective intent. In other words, we're supposed to look to whether, what's her name, Jackson Moser felt free to leave. And I think looking at that intent, you can make arguments about that, but there is, why, how could we say she didn't feel free to leave when she, in fact, left? Well, she knew she was being confronted by police officers. She knew that the police officers wanted her and the others off the freeway. And in fact, she was being pushed off the freeway. She certainly knew that her freedom of movement was restricted, right? She could not go back onto the freeway, for example. The officers had made that clear, and that she basically could only go in one direction. Yes, she had some freedom of movement, basically turn around and run, which is what she did here. But to suggest that she was being pushed off the freeway, I have a question on this. What case says that in order for somebody to feel free to leave, they have to feel free to leave in every direction, including on a freeway? Well, I don't know. I don't think you'll see any cases that says it in those language, in those terms. When you're talking about consensual encounters in the street where the courts found that a person was free to leave, you're not talking about it in the enforcement action, which you had here. But even if a law enforcement, even on a street encounter, if somebody may feel free to leave in 340 degrees of the 360 degrees, but they're never going to feel free to leave by walking right through the officer who's standing in front of them. And that can't be relevant, right? Well, sure. Of course you're not going to walk through the officer. But in this case, the context here was, it's obvious that the officers were number one seeking to have the protesters, everyone, get off the freeway, move up the embankment. Number two, anyone in that situation, I don't realize that's what the officers were doing, is that they may also be subject to further detention and arrest because of everything that was happening. This is not like at all the encounter you have, citizen officer on the street, some questions are asked, no orders are given, and the person is just free to walk away. This is a much more coercive environment, albeit there's, if you want to call it an escape hatch of sorts, available to Ms. Jackson, in which, of course, she turned and she ran. Part of the reason it was coercive is because the people were somewhere where they had no legal right to be, correct? Well, it's true, and that's what started it. And that's, there's no argument being made here that blocking the freeway was lawful or justified. Obviously, law enforcement response was appropriate, but that doesn't give an officer the right to use excessive force. And when you focus on what happened between Ms. Jackson Moser and Officer Armstrong, what you have is an officer intentionally swinging his baton under circumstances, these circumstances, where he admits that, no, you could not use an intentional head strike to hit a protester. You got to go to a jury on the 14th Amendment claim, and you lost, correct? Correct, right? But that required a malicious showing, and then this is where all the evidence about the officer's intent that Judge Session described accurately from the record becomes very important to the 14th Amendment standard. But as Judge Wardlaw pointed out in quoting from the Davis decision, those factors, the officer's intent, gee, I thought, you know, I was just trying to protect myself, acting in good faith without malicious intent, are irrelevant to the objective reasonableness test. Judge Wilson's order, which obviously you've read, you note that, well, it's been, what, 30 years since Graham v. Conner was decided, almost an equal amount of time since Reed v. Hoy, really this circuit's first decision on that point, and he cites two district court opinions, one from Kentucky, one from Chicago, one of which was just an accidental door slam. In other words, there's no cases that say that, well, because the person got away, that's not a seizure, right? And in fact, I go back to Falarka v. Bergen, no, a protest case where the three people got away, they weren't detained, they weren't held up, they were, in effect, free to go, and the court does a 14th Amendment objective reasonableness analysis. So that standard I submit applies. Would it have been a seizure if he had hit her so hard that she was knocked unconscious and fell? Well, A, for sure, I, sure. From the position that I'm articulating here, the cases say that, yes, and I mean, of course, we see lots of cases that say that. What's different about this case is, why we're here, is that she did not go to the ground, she was not knocked unconscious, she turned and she continued to flee up the embankment to Grand Avenue. And so the question is, is that still a Fourth Amendment seizure for an excessive force analysis? Our position is, it is. And do we have, what's the closest precedent in our circuit for that? Well, again, I go back to the Filarka v. Bergenow decision discussed in the reply brief. But, you know, if you also go back to Pierce v. Motoma County, if I pronounced it correctly, the decision by Judge Fletcher, the person's already in custody, already seized, and gets beat up. Now, is there a seizure from the beating? Well, I think you have a very good argument. You say, well, what do you mean? They're already in custody. And then there's the in bonk decision of, where the fellow is discussing, I'm sorry, the fellow is strapped into a chair and they do a blood extraction in order to perform a DUI test. Now, he's strapped in the chair, he's not going anyplace, period. Taking the blood test doesn't restrict his freedom of movement, right? He's already strapped to a chair. And this court says, you know, it's a Fourth Amendment violation under these facts. It's a Fourth Amendment analysis. So, the point of these cases is that just because someone manages to get away, as happened here, doesn't mean it's now a Fourteenth Amendment analysis and not a Fourth Amendment analysis. Well, when exactly is she in custody, then? When is it reasonably . . . She was not in custody. Pardon me? She was not in custody. Okay. Okay. So . . . I mean, it's true, she wasn't, right? I mean, we all know that. It's pretty simple. She was obviously dealing with a police presence and reacting to the police and reacting to the show of police authority, none of which we're disputing as being inappropriate in terms of the show of police authority and what they were doing. She's obviously reacting to all of that and she has her movement restricted because of it, right? But she's not in custody. No one puts handcuffs on her, that sort of thing. So, I guess the closest case you would rely on is Nelson v. Davis. Well, Nelson v. Davis, yeah, the footnote four, if that's what you're referring to, where the court made it clear that, look, even if it doesn't result in someone being detained, so long as there's use of physical force, you know, under the show of police authority, and actual force is used against the person, it is still a Fourth Amendment seizure. Correct. So she's not in custody, but there are a lot of factors present which suggest, perhaps, to a reasonable person that they're not free to leave. There's one, the show of force by police, the 20 or 30 officers who are approaching these demonstrators, the threats and violence and the language that's being exchanged, apparently that's quite disruptive. Are you suggesting that maybe she felt that she was not particularly free to leave, despite the fact she left, but not particularly free to leave based upon the assessment of these other factors, like police showing a particular aggression, et cetera? Sure. The totality of circumstances, and I know I'm over my time, so I'll make it very brief, but just to use a more obvious example, the prisoner who's in serving time in the state pen and is outdoors performing some type of work, you know, he knows he's not free to leave, right, to just turn around and the nature of the work he's doing, he's outside. He walks away and leaves, you know. The prisoner was still under restraint, although obviously in those circumstances he was free to leave. That is similar to what we have here. Unless there are further questions, I'm over a minute over, I will submit. Thank you. Good morning, Your Honors. May it please the Court. I am Deputy Attorney General Molly Murphy, representing Officer Junot Armstrong. First, I wanted to address the point that the Court made about the decision Nelson v. City of Davis. Nelson is in several respects, including the fact that the student who was shot in the eye by a pepper spray pellet collapsed on the ground and stayed there. It was a party the police were trying to disperse, and the student's movement was terminated. Yeah, I know that. That's why I asked that hypothetical question, but the question for me is, is that a distinction without a difference? Well, it's not because the standard test for Fourth Amendment is whether an individual would feel free to leave, as the Court has mentioned. And is that an objective standard or a subjective standard? I believe it's an objective standard, Your Honor. I think it's objective too, but I just want to see what you have to say about that. So in this case, of course, the appellant did feel free to leave, and she left, and so did her brother, and so did all of the other protesters. The only place they were prevented from going was the freeway, which everybody's prevented from running on the freeway. That was obviously an illegal place to go. In 2014, when this incident occurred, there was no case instructing peace officers that they were prohibited from swinging their batons once. Wait, what year was this? 2014. To protect themselves when they were assaulted during a chaotic protest. Qualified immunity bars the First and Fourth Amendment claims. All witnesses here agree that this incident happened within two seconds. CHP officer Juna Armstrong was kicked at and below the belt by Ms. Jackson-Moser's brother, who was wearing boots. The kick was painful and caused Officer Armstrong to wince and step back. The pain that he felt was a four on a scale of one to five. He expected more blows, and he swung his baton once to defend himself. Counsel, if we agree with you, either that there was no seizure, or for Fourth Amendment purposes, we don't even need to reach the question of qualified immunity, correct? That is correct, yes. In fact, the district court didn't rule on the grounds of qualified immunity. That's correct, as well. I don't know why you're raising it, because he just outright ruled on your claim, on the claims. He didn't rule on qualified immunity at all. He didn't. It's that the court can affirm on any grounds based on the record, and there have been multiple very strong qualified immunity cases lately instructing courts that unless there's a specific case on point in excessive force cases that clearly established to the officers that their conduct was illegal, then it's necessary to roll for the defense. And that's why I bring it up at this time. There was also a First Amendment claim, and the plaintiff did not those elements either. I can proceed with the First Amendment claim, or qualified immunity, as pleases the court. Well, I don't know what my colleagues prefer, but I would like ... Closing counsel didn't bring up the First Amendment claim during his argument. Right. I don't think, I mean, I think you should just make the arguments based on what the district court held here. That's what we're reviewing. It is. Well, the district court correctly found that plaintiff did not meet the elements for a First Amendment claim. She had to show, first, she engaged in constitutionally protected activity. Second, the defendant's actions would chill a person of ordinary firmness from continuing the protected activity. And third, that the protected activity was a substantial motivating factor of the defendant's conduct. Plaintiff failed to show that she was engaged in protected activity. They were illegally on the freeway. I really am just interested in the, you know, if there's any cases or logical principle about why it makes a difference if the person who is subject of the force falls in these circumstances, or is unconscious, or becomes incapacitated in any other way, versus they continue on a route to exit. You know, what's the doctrinal principle that makes that distinction? As to the Fourth Amendment claim. Your Honor, if you look at the case Brower v. County of Inyo, a Supreme Court decision, it talks about how there has to be an intentional acquisition of physical control by the law enforcement officer. And in this particular incident, Officer Armstrong never had physical control. He was kicked, he was in pain, he reacted, swung his baton, it landed within two seconds, and that was the end of it. So there's no physical control here. Brower also said, seizure does not apply to an unknowing act. It's true he didn't know he was swinging the baton, but he thought he was under attack at the time. He didn't know or intend, as the Court has discussed, to detain this particular plaintiff. Are these questions that should have gone to the jury? No, because the plaintiff didn't have any evidence to give to the jury. It was obvious she wasn't seized. And, you know, the U.S. Supreme Court also ruled in Brendlin that seizure requires submission. Ms. Jackson was never submitted. Seizure without force requires submission. But there's a distinction between seizure without force and seizure with force. Well, in Brendlin, that was a traffic stop case, and the Supreme Court ruled that the passengers were seized as well as the driver of the car. So, you know, I don't really see that that involved a specific use of physical force against those passengers who the Court determined were seized. Counsel, is California v. HODE R.E.D. relevant here? That was the case with the... not really, because, again, that was a case where a suspect or the juvenile was tackled by police. And at the point the juvenile was tackled to the ground, and they had him and they held him, then he was seized. I think this was a case where he dropped the drugs before he was tackled, so there was no seizure when the police were pursuing him at the time that he dropped the drugs. Did you move for qualified immunity? You know, the constitutional issues are tied up in it as well. And I believe the district court found that there was no evidence for a rational jury to determine as to the constitutional issues and did not get down to the second prong of qualified immunity. Did you appeal from that, or was that appealable? That's appealable. The denial of a motion for summary judgment on qualified immunity is appealable. Did you appeal? No, we didn't. It's our position that there was... the record clearly stated grounds for affirmance on qualified immunity as well as the constitutional issues that... I think if you didn't appeal, how could we consider that now? Because the court could affirm the granting of summary judgment based on the fact that the record clearly shows a qualified immunity would apply. So you're looking at the district court opinion, and you're seeing judgment on qualified immunity because of its analysis of the constitutional question. Is that correct? So you think that suggests that we have the authority to rule on qualified immunity, and you want to use all of the Supreme Court cases that have been decided? Casella is one of them that I know quite well, fortunately. But you want to use that to... as an alternative? Well, yes, Your Honor. I mean, we are confident that the plaintiff did not enforce a Fourth Amendment violation. However, there's ample evidence and briefing in the record to show that the court also had qualified immunity as a grounds to affirm. But the court denied your motion for summary judgment on qualified immunity grounds? We didn't read it that way, Your Honor. Well, if it had granted it, you wouldn't be here. The court granted our summary judgment motion. But not on qualified immunity grounds. If he had granted a summary judgment motion on qualified immunity grounds, then this motion on the merits would not be in front of us. The court granted summary judgment as to the Fourth and First Amendment claims based on the fact that no then allowed the plaintiff leave to amend late in the case to state a Fourteenth Amendment claim, which was tried to the jury. And the plaintiff hasn't challenged the jury's verdict. All right. Thank you, counsel. Thank you. I'll give plaintiff's counsel, appellant's counsel, a minute. Maybe you can clarify the procedural usher here. Judge Wilson never ruled on qualified immunity, period. Okay. Disposed of the Fourth Amendment claim, no seizure. Disposed of the First Amendment claim, and Judge Wilson tends to get to the point, and that's like, boom. Never got to qualified immunity. Hammer versus Gross is the en banc decision. Guy restrained fully, forcibly extracts the blood. I mean, the point is that focusing on whether someone can leave or not, I don't think is the critical factor here. Intentional acquisition of physical control, I would submit however brief that physical control is, so long as there is intentional application of upon what the officer intended or thought. You're talking about intentional exertion of force to control a person, and it becomes relevant? Yes. As you can tell, I'm kind of anxious to jump in, and I apologize. Okay. When you're talking about intent here, I think you're talking about two Take the door example, I think it was the Kentucky case, Chicago case. You open the door, and someone's standing there, and you hit them. Is that a police use of force? I would say it's not, because although the officer intended to open the door, he was not intending to use force. Okay. Just an accident. But what Graham is talking about, where you say you don't look at the subjective intent, they're talking about the specific intent to do harm, to be malicious, that sort of thing. Once you have an intentional, that is the officer intended to use physical force, boom. You satisfied the intent requirement under Brouwer in the seizure cases. Here we had plenty of evidence, right, from Officer Armstrong himself, that he intended to swing the baton. He intended to swing the baton at a human being in front of him. Now, he had various explanations as to why it wasn't wrongful, or why it was an accident, or whatever, but he intended to swing the baton. The Jensen v. Oxnard case, where the police standoff situation, SWAT officer shoots a figure, turns out it was another police officer. Now, obviously, the shooting officer never intended to shoot a fellow police officer, but this court held it was a seizure because he did intend to shoot the figure in the doorway. So, I would say the evidence shows a Fourth Amendment seizure, intentional use of force, which, however brief, was the use of force. I could talk a lot more, but you have other things to do, I know. All right, thank you very much. Jackson Moser v. Armstrong will be submitted, and the session of the court is adjourned for today.
judges: Wardlaw, Sessions, Bennett